Good morning, your honors. May it please the court. Pamela O'Leary Tower on behalf of Mr. Dreyer. Also present with me is my colleague and co-counsel Roger Rosen. I would like to reserve five minutes for rebuttal. We're here on a very simple issue, which is the position of the defendant appellant that the district court judge sua sponte should have ordered a competency hearing, a competency evaluation for Mr. Dreyer prior to imposing sentence in this matter. And the record is replete, we believe, with evidence, medical evidence, sufficient to alert the district court judge of its independent obligation to ensure that Mr. Dreyer was competent prior to imposing sentence. Well, I'd like to talk to you about that, just focus. I think we're all prepared to get here, so we're familiar with a lot of the things. Here's my concern, that essentially you've got two medical evaluations that opine that he's competent to enter a guilty plea. He has a lawyer at the time, and he has a judge that's looking at him. Now, clearly this isn't a man, and I think most of us that have been trial judges know that many of the people that are in court don't enjoy perfect mental health. But essentially by what you're asking is imposing the sua sponte duty, even though the judge has a number of mental evaluations, and experts that say that he's competent to do that. He has a lawyer that doesn't say that there's a problem. He negotiates a plea, and now you want, what, some three years later for us to say, well, let's go have him looked at again. I don't, it just doesn't seem, how could a judge ever even take a plea when you don't see, you know, and he didn't complain at that time. So now we're looking back. Actually, we are not attacking the plea at this point. We're attacking the sentencing. And I forgot to thank Mr. Rafael for bringing to my attention the recent district court opinion of Judge Liu regarding the, his findings about Dr. Martel, who performed actually the only competency evaluation in this case. There was just one regarding his ability to enter a plea of guilty. And in Hernandez, the recent case, and the reason this is important to our case, I believe, is that Dr. Martel was found to be inherently incredible, and Judge Liu rejected his testimony in favor of the testimony of the defense experts in that case. The case is not related in any way to our case, with the exception that Dr. Martel is the only physician in Mr. Dreyer's case who did find him competent to plead guilty. Actually, Your Honor, Dr. Rudnick found that Mr. Dreyer may not have been competent to have, even at the time of the crime, he may not even have had the mental ability or the mental state at the time of the crime. And Dr. Amon found that he lacked the ability to, possibly lacked the ability to enter a plea of guilty competently. Neither of those two physicians were asked, and we concede that, to perform full-blown competency evaluations. The only one who was asked by prior, prior counsel and the government was Dr. Martel, who has now been discredited by a United States federal district court. In a particular case, correct? In a particular case, but also, Your Honor, for the record, in the footnote, which is compelling, it's a 138-page case, so I did digest it quickly in my Rule 28J letter. In the footnote, Judge Liu refers to the fact that, of other incidences of what can only be characterized as professional misconduct on Dr. Martel's part, he was removed from a number of federal death penalty cases as the prosecutor's expert. I think that's overwhelming evidence of his incompetency to even do a competency evaluation in this case or any other case, and it certainly calls into doubt his qualifications. Dr. Rudnick also reported that, with minor exceptions, Dreyer's cognitive skills were intact. Dr. Amon and Dr. Krauss concluded that Dreyer manifest symptoms of early frontal temporal dementia, which has caused him to engage in activities that he may or may not have clearly understood, and that he exhibited poor judgment in several incidences. However, their reports don't make any expressive finding that Dreyer's competence are, that he's not competent. He has a lawyer that we're not finding to be ineffective that isn't saying that he didn't know about his plea agreement, and he's got a judge that's looking right at him all of these times. Well, I think the – a little background here is necessary. The initial – the judge who took the plea, Judge Larson, is no longer on the bench. During the plea colloquy, if the Court remembers, Mr. Dreyer, at some point, sua sponte offered to Judge Larson that he had holes in his head. He literally had that – used that word, hey, judge, I had a – I have pictures, and did you know I have holes in my head? And at that point, they recessed and went outside and came back in. Was he represented by counsel at the sentencing? Yes, by new counsel. Right, but so isn't it incumbent upon his counsel to – isn't it incumbent upon his counsel to request a competency hearing? No, it is not. In fact, you can't excuse – the cases are clear. I'm not going to say it's not incumbent. What I'm saying is that the opinion of counsel is one factor in a competency evaluation of this type. And if I sit here and say my client's not communicating with me, it's not simply taken as fact or evidence by a district court judge. But on this record, the lawyer doesn't say my client doesn't understand me, my client's not assisting me. No, what he does say is that his client – he's not going to let his client allocute, because he has no way to know what he's going to say. And in fact, the allocution is – it's bizarre in nature. Mr. Dreyer says words to the effect of, thank you, Your Honor, I've been before you three times, and I appreciate you, period. It's completely disconnected from why he's there. It's a two-pronged alternative analysis, which is he – whether he understands the nature of the proceedings before him. There's no evidence that anybody asked him specifically about it. But I guess you're equating that into saying if – let's say you advise your client not to testify because you think your client's not going to make a very good impression on the jury, or you think that your client's a liar, or you think any number of things. Does that – ergo, does it follow from there that you feel that your client is not competent? Absolutely not. All right. And so here, if you're saying I don't want you to talk to the judge because I think you're going to make a fool of yourself and you're not going to help the mitigation in this situation, you know, you're not going to serve yourself well, does that per se equate to I don't think that you're competent under the standards of standing trial or being sentenced or anything? No, I don't look to counsel's role in this at all. But if counsel felt that he didn't understand what was going on or he wasn't assisting in his defense, doesn't counsel have a duty to advise the court? He has an absolute duty. And if he abrogates that duty, the government also has an independent duty. And if they abrogate that duty, the judge has the ultimate duty and obligation to sua sponte, step in, and make sure this individual is competent. I agree, but the flip side is if they didn't see that problem, the prosecutor didn't see that problem, they didn't see that problem, and the judge didn't see that problem, and there are people that have looked at the defendant and are seeing that he has the ability to stand, you're asking us to impose a sua sponte duty where you don't feel like. What if you don't feel that way? You feel that he was competent. On this record, when you have medical evidence, medical evidence, you have reports by forensic evaluators, and let's disregard Dr. Martell completely. They all agreed, and that's probably the one point where Dr. Martell can be trusted, that Mr. Dreyer suffers from frontal temporal dementia, FTD. They all agree that the disease, and it is a disease, is progressive. They all agree that the disease is fatal. They all agree that the disease cannot be treated in and of itself. It is irreversible. You can treat possibly symptoms, and the forensic experts speak to that possibility. The disease progresses. Part of the analysis that we've provided is that time goes by from when Dr. Dreyer, Mr. Dreyer was evaluated by Dr. Martell, and Dr. Martell is the only physician or only expert that found or was asked to find specifically the issue of competency to plead guilty. Time went by. The disease is progressive, and the cases are clear that when you have those types of situations, that simply because you're, it's not a static condition, particularly in his case. Cancel your, over your time, and I have a couple of questions I want to get to. Your five minutes has gone totally by the questions we've asked you, and you're now in overtime, so I guess you're going to end up with double the time if we keep questioning you. Well, I have two questions I want to ask. The first one is where is Mr. Dreyer housed now, and what is his medical condition? He is in a federal camp. His medical condition is unknown because there's no treatment for him vis-à-vis the FTD. He has had surgery to clear his esophageal passages. I do know that, and that's all I can say. Is it possible for you to go back to the district court and move to modify the sentence? To modify it, to? To reduce it or to hold a competency hearing or, I mean, I guess one of the alternatives would be to ask the district court to modify the sentence. Well, you are asking to go back for a competency hearing, aren't you? I'm asking to be remanded back, to have the sentence vacated, to have Mr. Dreyer sent for a competency evaluation. And then what happens after that is for the future. So you would have the hearing that you requested before the same judge? Eventually, yes. Well, why do you say eventually? I thought that's where, if we were to remand now, we would remand for a competency hearing. A competency evaluation, Your Honor. Yes. So he would be remanded back, sentence would be vacated, or you would vacate the sentence, or the judge would. Then Mr. Dreyer would be ordered to. How much time has he already served? Less than a year. And do you want to address the motion to strike? No, Your Honor. Okay. All right, you better. You're two minutes over, and we'll have to give you a few minutes for rebuttal. May it please the Court. Good morning, Your Honors. Tony Rafael on behalf of the United States. Mr. Rafael, I have a question for you. Does the government really oppose giving this man a competency hearing at this time? I mean, seriously, given the nature of his diagnosed disease? I mean, I understand your legal position, and it is a close case. It's a difficult case because you have to look at the evidence that was before the judge and determine whether she should have issued a competency hearing. But do you really have any doubt that this man has a serious disease that's progressive and fatal and not necessarily being treated while he's in this prison right now? Your Honor, I think we all agree, and as Judge Callahan said, district judges are often faced with defendants who have mental illness. Mental illness does not equate to mental incompetency. No, we know that. Of course. And in this case, Your Honor, what's the harm, right? Why not send it back? Why not have a competency hearing, send him to Butler? One thing that I'd like to first address is we know from the pretrial, from the bail hearing that Judge Phillips held on June 20th of last year, 2011, we know there was a pretrial services report, and we know there was a statement by defendant's daughter who said she visited him at the camp. He's adjusting well. He's, in fact, teaching a class. Judge, is that really admissible at this point of the proceedings, given that what we're really looking at is what the judge had before her at the time of the sentencing when she, you know, the question is, and it's a tough question, was there enough in front of her that she should have on her own ordered a competency hearing? And, Your Honor, the other reason why it shouldn't be a case where every time there's a mental issue or a serious mental issue that doesn't rise, perhaps, to competency, and I am going to address what Judge Phillips had before her, to send it back. And this case is a good example because we have victims, and I think the government is remiss if we don't mention the victims in this case. And if you look at the sentencing transcripts. One of the victims have to do with the condition of the defendant, his mental condition and what was apparent to the judge. Your Honor, I think the reason why I'm mentioning that is the fact that the parties, both sides and the victims, are entitled to a measure of finality. When they've gone through the process. But isn't the question whether the evidence before the judge should have raised a reasonable doubt as to mental competency? Whether there was one victim, a hundred victims, whoever they were, whatever they lost, what does that have to do with what kind of evidence was before the judge and whether it would cause a reasonable judge to find enough doubt to give them a mental competency hearing? That's exactly it, Your Honor. Let's take a look at the evidence that Judge Phillips had before her. We know from the PSR, which was issued, and this is a case where the defendant pled guilty on September 20th, 2009, before Judge Lawson. A few days later, the case was assigned to Judge Phillips. But the record shows that Judge Phillips did not rush this case through. Even though, as Your Honors know, she's the only judge in the Eastern Division, works incredibly hard. Oh, you know, I wish you'd talk about the issue, not about the victims, not about Judge Phillips being a hard worker. Nobody doubts that Judge Phillips is a fine judge. Can we assume that and get to the issue? Of course, Your Honor. And here's what Judge Phillips had. The PSR is issued in March of 2010. The probation officer has reviewed the initial scan, the initial report from Dr. Amner. It doesn't say there's any competency issues. In fact, the probation officer says, and he quotes a statement by the defendant saying, hey, perhaps my mental illness will keep me out of Federal prison. So in his letter to the court, the probation officer says that he doubts some of the claims made by the defendant. And we have Dr. Amner's report. We have two parts to that. The first part, the scan with the report, is issued in January or February of 2009. This is before even the defendant had pled guilty. And he had two retained counsel. And then after the PSR comes out in June of 2010. So he had two different lawyers that never told the court that this man is not competent. Two different retained lawyers. To either plead or stand trial or be sentenced. Actually, four lawyers, Your Honor, because you had two very experienced lawyers who handled the change of plea. So then we show up for sentencing October 5, 2010. The parties are there. The court is ready to go. And retained counsel are there. And they tell Judge Phillips that the defendant is contemplating getting new counsel. And they needed more time to contemplate whether to file a motion to withdraw the guilty plea. That's October 5, 2010. We have two new counsel then retained and substituted. Mr. Ginsberg and Mr. Etra. Mr. Ginsberg himself is a former M.D. He wrote a letter, one of the letters to the court, 42 years' experience as an attorney. Mr. Etra, 32-plus years' experience as an attorney. These were not fly-by-night attorneys. Very experienced, retained counsel. Some of the best. And what do they do on October 25th? He might have been better off with a feral public defender. I'm sorry? He might have been better off with a feral public defender. On October 25th, Your Honor, they file a status report with the court, with a declaration signed by the attorneys. And they tell the court in the declaration that they discussed the matter with the defendant, with the defendant's family. And we know from one of the letters to the court that the defendant's own daughter is a Ph.D. psychologist, herself is a doctor. So they say, we discussed this with the defendant, with his family, and we're going forward with sentencing. We're not going to withdraw the guilty plea. So that's what Judge Phillips had before her, before sentencing. And we have sentencing here. We have what the attorneys said. How many doctor's reports did she have before? By the sentencing hearing. So we have Dr. Ammon's two-part report. We have Dr. Mattel's report. And we have Dr. Rudnick's report. Now, Dr. Rudnick's report, that was a report that was issued on November 20th, 2010, less than a month before the defendant was sentenced. Dr. Rudnick, he's in Santa Monica. And he wrote in his report that the defendant drove himself from Manatee, almost two hours, northern San Bernardino County, to Santa Monica. He evaluated. Is there any argument that he's incapable of driving? Your Honor, what we'd say in this case, this shows, in addition to the evaluations, the recommendations, that this is a defendant who was able to function. All right. So, but he has brain trauma. And all the doctors agree that he has frontotemporal dementia, which I don't know how that, I mean, all of these reports, I don't know how that actually relates to competency. I know we have a lot of people on death row with frontotemporal dementia and brain trauma and all sorts of brain injury. I don't know whether they've had competency exams or not. But it would, if I were sitting there and seeing all these reports, I know it would occur to me, you know, if this guy has all this brain trauma, let's make sure he's competent for this stage of the proceedings. It would occur to me. And maybe it's because I've looked at so many capital cases and seen so much trauma like this. And I'm just, I know that's not the standard, but I'm just saying with three medical reports, all saying that he has this terrible disease, wouldn't it, shouldn't it have come to her mind that, you know, maybe that he should be just evaluated for his ability to be sentenced? I mean, think about it. He couldn't allocate. And why was that? Why couldn't he allocate? Isn't that an important part of the sentencing when you can ask for mercy? Your Honor, I think. Explain your actions. Express remorse. Of course, Your Honor. But as Your Honors know, sometimes defendants at the advice of counsel don't. But that's not what counsel said. Counsel said he didn't put him on paralecute because he couldn't tell what he'd say. He might say one thing one minute, one thing another minute. And the doctors say, here's one of the reports, behavioral disambition, impaired word-finding ability, loss of social propriety, lack of insight into his own impairments. That's why his lawyer didn't put him on to exercise the most important right of sentencing. Well, I guess you could also have a sociopath that doesn't have any competency issues that say if they were charged with murder that they wouldn't self-allocate because they would say, I enjoyed murdering the person. And that's not going to do a whole lot to help you in terms of your sentencing, but it doesn't have anything, you know, to do with their competency. So if this court were to hold that sua sponte, a court, even though several counsel has not called it to the court's attention, several doctors have looked at someone, how would that affect the proceedings? Would we just have to every time have a competent, have a doctor look at someone before they take a plea? That's exactly the concern, Your Honor. Oh, you really believe that? Don't we have a number of cases that say the court must sua sponte, order examinations when it's apparent to the court that there could be a problem, that there's good cause? And did that cause a flooding of the courts with cases where we have to send everybody for examination? The answer to that question, yes or no? Of course, no, Your Honor. Okay. The other problem I see is that if we were to have a competency hearing now, what would that tell us about his competency then? He's probably worse off now because it's progressive, right? It is progressive. I think all the experts agree to that. The other part of the sentence that I don't get is he's 75, and she sentenced him to 10 years with this disease in front of her, but no one's raised that, so. And again, Your Honor, if you look at, as the court knows, the recommendation of the probation was 188 months, 15 years. Yeah, I don't get that either. You had a judge found that the distribution of the oxycodone contributed to the death of a person. Right, but how much responsibility does the person who's the drug addict, getting the drugs, have to take for their own death? I mean, seriously. I think I would submit that the doctor who was licensed to prescribe very strong opiates, this was a person, a psychiatrist who was into pain management who knew this. I would submit that a doctor ought to know better. And this is a person, as the PSR shows, who was writing prescriptions all over the place. Over 35,000 illegal pills of oxycodone were distributed by him or prescribed. Over 70,000 pills of hydrocodone. Very strong opiates. And a doctor ought to know better. Okay, you're over also. If you have anything urgent that you didn't get to, you can do in a minute. And, Your Honors, the other thing that we would add is that Judge Phillips put on the record her observations. We had the benefit in this case. Oh, you know what? I really don't think we should consider that evidence because it wasn't, the standard is what was in front of her at the time, not her post-talk justifications for a sentence when she knows it's being challenged and that she's being challenged for a failure to provide or call for a competency hearing given all this medical expert testimony. So she was very defensive in all of that, obviously. That's okay. But should we really be considering it? Because that's not in the standard. Your Honor, again, it was just her explaining her sentence. But importantly, Your Honor, also. She didn't get to do that. She's supposed to state her reasons for her sentence at the time. And, of course, in this case, she didn't have that opportunity to explain why. Yes, she did. She could have gone and she could have explained everything at the time. She doesn't have a, she isn't a party in this thing. She doesn't get to explain why she failed to ask for a competency hearing at the time. Of course, she did put, she went to great detail explaining that she had reviewed the medical record. She had. Right, but she should have done that at the time. And I'm not saying anything derogatory about her, but I'm just saying I don't think it's appropriate to try to expand the record without even making a motion to expand the record. All right, counsel. You're at three and a half minutes over. Thank you. Thank you, Your Honor.  No, Your Honor. Thank you, counsel. The case is adjourned. It will be submitted. Next case for argument is United States v. Sanchez.
judges: Reinhardt, Wardlaw, Callahan